

FILED

DEC 0 7 2020

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| LORINDA SAMPSON and TINA BERNARD, Personal Representatives of the Estate of Maynard Bernard, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS, TIMOTHY LAPOINTE, Great Plains Regional Director, and GRADY RENVILLE, <br><br> Defendants. | 1:20-CV-01016-CBK <br><br><br> MEMORANDUM OPINION <br><br> ORDER <br><br> AND <br><br> DECLARATORY JUDGMENT |

Plaintiffs filed a complaint for a declaratory judgment that a settlement agreement entered into on June 23, 2011, in 1:08-cv-01019-CBK, is valid and enforceable and for an order summarily enforcing the terms and conditions of the settlement. Plaintiffs further seek a writ of mandamus directing the Bureau of Indian Affairs to distribute $637,500 plus interest to the estate of Maynard Bernard. This matter came on for a hearing on an order to show cause on November 24, 2020. An evidentiary hearing was conducted with all parties present.

The background of this case is fully set forth in the pleadings herein and in 1:08-cv-01019-CBK. Maynard Bernard and his wife Florine Bernard filed suit against the United States Department of the Interior and Grady Renville alleging that, on April 15, 2004, Renville, with the help of the Bureau of Indian Affairs Realty Officer, secured a gift deed for 45.5 acres of Indian trust land from Maynard Bernard to Maynard Bernard and Grady Renville as joint tenants through undue influence, fraud, and

misrepresentation, at a time when Bernard was 76 years old and incompetent. Florine
Bernard was required to sign the gift deed because she was the spouse of Maynard
Bernard.

In June 2004, the Bernards received a copy of the gift deed to Renville and, in July
2004, the Bernards sought an administrative declaration from the Superintendent of the
Sisseton Agency of the Bureau of Indian Affairs that the gift deed was void. The
Superintendent denied the request, stating he lacked authority to set aside the deed. The
Bernards appealed to the Regional Director and on February 3, 2005, the Regional
Director declined to declare the gift deed void. The Bernards thereafter appealed to the
Interior Board of Indian Appeals. On October 16, 2007, over three years after the
Bernards initially challenged the gift deed, the Board affirmed the Director's decision.
The Bernards thereafter filed an administrative appeal under the Administrative Appeals
Act, 5 U.S.C.§§ 701-706, together with claims of breach of fiduciary duty and trust
responsibility against the Department of the Interior and claims of fraud and
misrepresentation against Renville.

The land in question was and is very valuable land at Pickerel Lake in Day
County, South Dakota. The parties apparently intended to develop the 17.3 acres of the
shoreline portion of the land and make a large profit on the sale of lake lots. Renville
contended in his answer to the 2008 federal complaint that, between April and June 2004,
he had expended $188,000 developing the land, making it unfair to set aside the gift deed.
His claimed work included removing brush and trees and contouring the land. There
were many factual and legal issues, including a possible remand back to the Interior
Board of Indian Appeals, which would have further delayed the resolution of the parties'
claims. Given the age of the parties to the gift deed, and the fact that the death of either
party would have resulted in vesting the entire interest in the land in the surviving joint
tenant without compensation to the heirs of the other joint tenant, in February 2011, this
Court ordered the parties to engage in mediation in an attempt to settle their claims.

The Bernards, Renville, and the United States Department of Interior participated
in mediation before the Hon. John E. Simko, then United States Magistrate Judge, on

2

March 10, 2011. Renville was represented at the mediation by three of his adult children who had power of attorney for Renville. Renville agreed in writing prior to mediation that his representative(s) would have the authority to bind him to a settlement. Following a full day mediation session, the Bernards and Renville reached an agreement as to the Bernards' claims against Renville. No agreement was made with the Department of the Interior as to the Bernards' breach of fiduciary claims against the Department or as to the appeal. Judge Simko orally set forth the agreement reached and that was recorded by a court reporter. The parties agreed that 28.2 acres of the land subject to the gift deed would be deeded back to the Bernards. The parties agreed that 17.3 acres of the property would be sold and that the Bernards would receive 51% of the proceeds of the sale and Renville would receive 49 % of the proceeds. The parties agreed to reduce their settlement to writing. Both parties agreed on the record to the settlement read into the record by Judge Simko.

Following the settlement conference, the parties entered into a written settlement agreement which was signed by Renville on June 13, 2011, and by the Bernards on June 28, 2011. The written settlement agreement provided that 28.2 acres would be deeded back to the Bernards, that 17.3 acres would be sold and the proceeds of the sale would be divided 51% to the Bernards and 49% to Renville. Renville agreed that the $197,000 in bills and expenses he claimed during the mediation session that he had incurred in developing the land would be his sole responsibility and that no part of the Bernards' 51% interest in the sale would be used to pay any of Renville's claimed previous expenses in developing the land. The Bernards agreed to be solely responsible for payment of their administrative and litigation fees and costs. Only those expenses necessary in preparing the 17.3 acres for sale would be paid from the joint sale proceeds prior to distribution to the parties. The written agreement twice states that the only money that Renville shall be entitled to under the agreement is 49% of the sale proceeds of the 17.3 acres of land. The written agreement provides that the death of any party shall not invalidate the agreement and that the heirs and estate of any deceased party shall be bound by the agreement. In consideration of the agreement, the Bernards agreed to

3

release their claims against Renville and agreed that Renville would be dismissed from the pending federal lawsuit.

Based upon the transcription of the oral record of the settlement agreement and all the briefs that had been filed in connection with the administrative appeal, this Court affirmed the agency action and dismissed all other claims for relief with prejudice, including the claims against Renville.

In February 2012, Renville deeded back 28.2 acres to Bernard. Bernard and Renville worked for several years to try to sell the 17.3 acres of lake front property but were unable to obtain their asking price. Florine Bernard died on March 25, 2012. Maynard Bernard died on March 2, 2017, and his estate remains in probate.

On June 8, 2018, the Sisseton Wahpeton Oyate Tribe purchased the 17.3 acres for the sum of $1,250,000. Renville received $612,500 as agreed to in the settlement agreement. The remaining $637,500 was deposited in a special escrow account with the Bureau of Indian Affairs for the benefit of the heirs pending the final order of distribution of the estate of Maynard Bernard. The Tribe entered into a written memorandum that Renville claimed he was entitled to the entire proceeds of the sale and thus claimed ownership of the $637,500 portion of the sale proceeds placed in the special account. Renville deeded the 17.3 acres to the Tribe and acknowledged that the $637,500 was to be placed in escrow with the BIA.

On May 23, 2019, a BIA Administrative Law Judge issued an order for the distribution of the estate of Maynard Bernard, including the $637,500 held in the special escrow account. Renville filed a petition for rehearing before the Department of Interior Office of Hearings and Appeals. Renville asserted that the $637,500 was his and should not be part of the Bernard estate. The Office of Hearings and Appeals regarded Renville's claim as an inventory challenge and remanded the matter back to the BIA for resolution. Judge Mary P. Thorstenson noted in her June 18, 2020, opinion that "[i]t appears Mr. Renville may be questioning the results of the outcome of the agreement which the federal court approved between the parties." That is an accurate assessment of the inventory challenge.

4

On August 12, 2020, the personal representatives of the estate of Maynard Bernard filed the instant declaratory judgment action. Defendant Renville resists the relief requested by plaintiffs, contending that he is entitled (by virtue of being the surviving joint tenant) to the entire proceeds of the sale of the 17.3 acres despite his previous agreement that the proceeds of sale would be split between Bernard and Renville, or their heirs, in exchange for dismissal of the prior federal lawsuit against Renville (wherein the Bernards had sought return of all the property deeded to Renville as joint tenant).

This litigation has gone on far too long. Defendant Renville has interfered with and failed to abide by the valid settlement agreement entered into on the record between the Bernards and Renville over nine years ago. The settlement agreement was the basis for this Court's decision to dismiss the claims against Renville in the prior case. There was no stipulation for dismissal filed to effectuate dismissal of Renville from the lawsuit. Further, the settlement was, at least in part, the basis for the United States Court of Appeals for the Eighth Circuit's decision to affirm the refusal to transfer the Bernards' claims against the Department of Interior to the Court of Federal Claims. The Eighth Circuit expressed its concern as follows:

> We recognize that the facts of this case are troubling. Apparently on her own initiative, the BIA realty officer advised Bernard to sign a gift deed conveying half of his interest in his entire property to Renville in a joint tenancy with the right of survivorship. In addition she told Bernard that this would be only a "temporary" arrangement based on Renville's alleged oral assurances, and she permitted Bernard to waive appraisal of his land before the transfer. She also allowed Renville to fill out the gift deed application, apparently because Bernard's eyesight was so bad he could not do it himself.
>
> The Bernards do not challenge the district court's decision on the merits of their APA claim, however, and they were not left completely without a remedy. <u>Through a settlement with Renville, they received half of the proceeds from the sale of the property originally intended for the joint venture and Renville deeded back the remaining acres.</u> (Emphasis supplied.)

Bernard v. U.S. Dep't of Interior, 674 F.3d 904, 909–10 (8th Cir. 2012). Both this Court and the Court of Appeals relied upon the parties' settlement in determining that dismissal of the prior federal lawsuit was in the interests of justice, despite the defendants' alleged actions in securing Renville a joint tenancy interest in 45.5 acres belonging to Bernard.

I find that Renville has played "fast and loose" with this Court and the Court of Appeals. He continues to do so. The portion of the opinion quoted and emphasized above is the "law of the case."

## I. Jurisdiction.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, on the basis of diversity. Plaintiffs are residents of South Dakota and defendant Renville is a resident of New Mexico. The amount in controversy exceeds $75,000. This Court further has jurisdiction pursuant to 28 U.S.C. § 1361 to issue mandamus to compel an officer of an agency of the United States to perform an official duty. Finally, this Court has ancillary jurisdiction to enforce the settlement agreement entered in 1:08-cv-01019-CBK.

Generally, "district courts do not have inherent power, that is, automatic ancillary jurisdiction, to enforce an agreement settling federal litigation." Miener By & Through Miener v. Missouri Dep't of Mental Health, 62 F.3d 1126, 1127 (8th Cir. 1995). "Ancillary jurisdiction to enforce a settlement agreement exists only if the parties obligation to comply with the terms of the settlement agreement is made part of the order of dismissal—either by a provision retaining jurisdiction over the settlement or by incorporation of the terms of the settlement agreement in the order." Miener By & Through Miener v. Missouri Dep't of Mental Health, 62 F.3d at 1127 (cleaned up) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381, 114 S. Ct. 1673, 1677, 128 L. Ed. 2d 391 (1994)). See, Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999) (the district court has inherent power to enforce a settlement agreement stated on the record during mediation). See also, Atmosphere Hosp. Mgmt., LLC v. Shiba Investments, Inc., No. 5:13-CV-05040-KES, 2019 WL 1301737, at *2 (D.S.D. Mar. 21, 2019) ("The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the

policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation").

Notwithstanding whether this Court has ancillary jurisdiction to enforce the settlement agreement, this court has an independent basis to assert federal jurisdiction in this case.

## II. Declaratory Judgment.

The Declaratory Judgment Act, 28 U.S.C. § 2201, operating in conjunction with Fed. R. Civ. P. 57, provides a procedural remedy for litigants seeking a declaration of the rights of a party. Rule 57 authorizes "a speedy hearing of a declaratory-judgment action" and such a hearing was held.

I find that the settlement agreement entered into in 1:08-cv-01019-CBK is clear and unambiguous. Renville contends that he is not bound by the settlement agreement and that he is entitled to the entire proceeds of the sale of the 17.3 acres as the surviving joint tenant. Renville contends that the settlement agreement is not valid because the Department of the Interior controls Indian trust lands and the parties could not agree to sell the property absent agreement from the Department.

This case is not about the title to the property at issue. This case concerns the ownership of the proceeds of the sale of the property. Even if the property had been in Renville's name only, Renville would still only be entitled to 49% of the proceeds of the sale of the property by virtue of the settlement agreement. It is irrelevant that, on the date of sale of the property, Renville was the only surviving joint tenant. Renville entered into a valid contract with Bernard, a contract which the heirs of Bernard are entitled to enforce, to sell 17.3 acres of land and split the proceeds 49% to Renville and 51% to Bernard or, in the event of Bernard's death, his heirs.

Plaintiffs are entitled to a declaration that 51% of the proceeds held in trust from the sale of the property belong to the heirs of Maynard Bernard.

## III. Mandamus.

The Mandamus Act, 28 U.S.C. § 1361, authorizes district courts "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to

the plaintiff." "A district court may grant a writ of mandamus only in extraordinary situations and only if: (1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." Castillo v. Ridge, 445 F.3d 1057, 1060–61 (8th Cir. 2006).

Further, "the All Writs Act, 28 U.S.C. § 1651(a), gives federal courts the power to issue writs of mandamus. The issuance of a writ of mandamus is an extraordinary remedy reserved for extraordinary situations." In re MidAmerican Energy Co., 286 F.3d 483, 486 (8th Cir. 2002). This is an extraordinary situation.

Pursuant to the settlement agreement in 1:08-cv-01019-CBK, 17.3 acres of land were sold. The Sisseton Wahpeton Oyate purchased the land for $1,250,000 on June 8, 2018. The Tribe paid $612,500 (49%) to Renville. The Tribe deposited $637,500 (51%) in a special deposit account held by the United States Department of the Interior, Bureau of Indian Affairs, pending final distribution of the estate of Maynard Bernard. The Department of the Interior is holding the funds pending resolution of the claimed legal dispute regarding ownership of the funds. Plaintiffs cannot access the funds absent a court order resolving their right to the funds.

Renville's claim that the funds held in the special deposit account belong to him is frivolous. The Court gave notice to defendant Renville and an opportunity to be heard as required by Fed. R. Civ. P. 11. He presented claims for an improper pursue, attempting to force plaintiffs to abandon the settlement agreement to avoid further legal expenses and costs. He was warned by the Court and given a chance to recant but refused to do so even at the show cause hearing. He caused unnecessary delay and needlessly increased the costs of litigation. He never claimed to have consulted a lawyer. He advanced orally and in writing in violation of Rule 11, legal contentions not warranted by existing law. He made false representations to the Court without any reasonable basis to do so and reasonable sanctions are appropriate.

The funds held belong to the estate of Maynard Bernard and his heirs. The estate of Maynard Bernard has been settled and the estate assets may now be distributed. The

distribution ordered specifically refers to the funds held in trust for the heirs. Plaintiffs are entitled to a writ compelling the Department of the Interior to release the funds to the heirs of Maynard Bernard as set forth in the order of distribution.

## IV. Pre-Judgment Interest.

"In a diversity case, the question of prejudgment interest is a substantive one, controlled by state law." Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 624 (8th Cir. 2003). See also, Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co., 933 F.2d 1433, 1435 (8th Cir. 1991) ("In a diversity action, state law governs prejudgment interest; federal law governs postjudgment interest.")[1] South Dakota law provides that a person entitled to recover damages is entitled to prejudgment interest. SDCL 21-1-13.1. Under South Dakota law, prejudgment interest is mandatory. JAS Enterprises, Inc. v. BBS Enterprises, Inc., 2013 SD 54, ¶ 45, 835 NW2d 117, 129. "The prejudgment interest award seeks to compensate the injured party for this wrongful detention of money owed." S. Dakota Bldg. Auth. v. Geiger-Berger Assocs., P.C., 414 NW2d 15, 19 (SD 1987).

"Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the Category B rate of interest specified in § 54-3-16." SDCL 21-1-13.1. The Category B rate is 10% per anum. SDCL 54-3-16(2). If a person is obligated to pay interest on a debt where no rate is specified, interest accrues at the Category C rate, SDCL 54-3-4, which is 12%, SDCL 54-3-16(3). Even if not required by state law, in the exercise of discretion it would be equitable to award some prejudgment interest in this case.

This case arose out of a settlement agreement but is not merely a breach of contract case. Defendant Renville not only breached the settlement agreement; he frivolously interfered with both the orderly administration of the estate of Maynard Bernard and thwarted the judgment of this Court in dismissing the Bernards' claims in exchange for a 49% interest in the proceeds of the sale of the land at issue in the prior

---

[1] Post-judgment interest in a federal diversity case is governed by 28 U.S.C. 1961(a). Post-judgment interest is computed daily and compounded annually. 28 U.S.C. § 1961(b).

federal lawsuit. Nonetheless, plaintiffs assert the correct rate of prejudgment interest is the Category B rate and that is the rate that will be applied.

I find that plaintiffs are entitled to prejudgment interest at the Category B rate, 10%. Under South Dakota law, unless otherwise provided by statute or contract, the rate of interest "is to be deemed an annual rate." SDCL 54-3-3.

The land was sold on June 8, 2018. At the time of the sale, Renville represented to the Sisseton-Wahpeton Sioux Tribe that he was entitled to the entire sale price. The record in this case shows that the Tribal Council was aware of the settlement agreement setting forth the distribution of the sale proceeds previously agreed to by Renville and the Bernards. Pending resolution of the dispute, $637,500 was placed in an escrow account. That account has earned some interest. The United States Department of the Interior, Office of Hearings and Appeals, issued an order for the distribution of the estate, including the $635,500 held in a BIA special account, on May 23, 2019. The heirs of the estate of Maynard Bernard were entitled to those funds effective that date. However, Renville continued to claim that he was entitled to those funds and sent a letter to the Department of the Interior objecting to the probate order of distribution. That letter does not appear in the record. However, the administrative law judge assigned at that time issued a notice of Renville's petition for rehearing on June 10, 2019. Plaintiffs filed this lawsuit seeking, in effect, payment of their portion of the 2011 settlement proceeds on August 12, 2020.

I find that the plaintiffs are entitled to prejudgment interest from May 23, 2019, the date the order of distribution of the estate of Maynard Bernard entered. Plaintiffs' arguments amongst themselves precluded an earlier distribution.

The sale proceeds have been held in an interest-bearing account since the date of the sale, June 8, 2018. As of November 27, 2020, the balance of that account was $673,217.34. Over the course of 30 months, the account earned $37,717.34, which is an effective interest rate of 2%.

Prejudgment interest on $637,500 at the Category B rate yields $63,750 interest the first year (May 23, 2019 -May 22, 2020). Beginning May 23, 2020, prejudgment

10

interest at the Category B rate yields $70,125 per year, or $5,843.75 monthly. Six and one half months of interest (May 23, 2020 – December 7, 2020) adds up to an additional $37,984.76. Plaintiffs are entitled to prejudgment interest in the total amount of $101,734.38. Defendant Renville is entitled to credit for $37,717.34 in interest that the account actually earned since the deposit. Thus, plaintiffs are entitled to $64,017.04 in additional prejudgment interest.

## V.  Contempt.

The United States Supreme Court has long recognized that "the power to punish for contempts is inherent in all courts." Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991) (quoting Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874)). "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. at 44–45, 111 S. Ct. at 2132–33 (internal citation omitted).

Renville engaged in contemptuous conduct when he failed to comply with the terms of a settlement agreement that formed the basis for the dismissal of a federal lawsuit against him. He interfered with payment of the proceeds of the sale of the property to the estate of Maynard Bernard. He appeared in this action and frivolously defended his interference with the payment of the sale price in accordance with the conditions of the settlement agreement.

Renville obtained a litigation benefit by entering into the settlement agreement. The Bernards were seeking return of all the property on the basis that Renville's joint tenancy interest in the property was obtained by fraud on the part of Renville and a BIA Realty Office employee. The Bernards agreed, after binding mediation, to dismiss their fraud claims against Renville in exchange for 51% of the proceeds of the sale of 17.3 acres of the 43.5 acres claimed to have been fraudulently transferred into joint tenancy. Renville obtained a substantial litigation benefit by having the Bernards' claims dismissed in exchange for the settlement agreement. He also received a substantial

11

monetary benefit. Renville paid nothing to obtain joint title to the 43.5 acres previously owned solely by Bernard. Renville claimed in the prior litigation that he had expended substantial sums to prepare and improve 17.3 acres of shoreline property for subdivision and sale. It was contemplated that he would be compensated for his claimed expenses by virtue of receiving a portion of the proceeds from the sale of the land that he claimed to have improved. Renville's refusal to abide by the terms of the settlement agreement and his interference with the payment of the sale proceeds pursuant to the agreement constitutes contempt.

"The doctrine of judicial estoppel protects the integrity of the judicial process." Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir. 2006).

> A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court. Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first. Therefore, a party that takes a certain position in a legal proceeding, and succeeds in maintaining that position, is prohibited from thereafter assuming a contrary position simply because his interests have changed, especially if doing so prejudices the party who acquiesced in the position formerly taken by him.

Id. (internal quotations and citations omitted).

Renville is judicially estopped from contending in this matter and in the probate of the estate of Maynard Renville that Renville is entitled to the entire proceeds of the sale of the 17.3 acres. Renville's assertion is clearly inconsistent with the terms of the settlement to which he agreed. Renville's assent to the settlement agreement persuaded this Court to dismiss a federal civil lawsuit against him. Renville's inconsistent position that he is now not bound by the terms of that settlement agreement poses a threat to judicial integrity. Renville would derive an unfair advantage, to the detriment of Maynard Bernard and his heirs, if Renville were not estopped from claiming he was not required to comply with the terms of the settlement agreement. Renville's position on the validity of the settlement agreement before this Court in 2011 is contrary to his claims

before the probate court and before this Court in the present action. His conduct is contemptable.

Pursuant to the American Rule, attorney fee shifting is prohibited in most cases unless there is a statutory or contractual obligation to pay fees. Chambers v. NASCO, Inc., 501 U.S. at 45, 111 S. Ct. at 2133. However, the assessment of attorney's fees is within the Court's inherent power as a sanction for contempt. Id. It is also appropriate under Rule 11.

Counsel for the personal representatives of the estate of Bernard Renville submitted, at my direction, an affidavit setting forth his fees, expenses, and costs incurred. Counsel included all such amounts since the death of Maynard Bernard. The fees and expenses from March 7, 2017, until June 29, 2020, concern services in conjunction with the probate of the estate, the settlement of the heirs' claims, and a possible petition for rehearing of the order of dissolution. I find that only the services, costs, and expenses rendered in conjunction with this action are appropriate as a sanction against defendant Renville. Services, costs, and expenses incurred beginning in August 2020, will be allowed.

As set forth in counsel's affidavit, his legal services are billed at $200/hour. Counsel is an experienced attorney who specializes in Indian law and matters between and among tribal members, tribes, and the Department of the Interior. I find his hourly fee is more than reasonable.

I find that fees in the amount of $15,050 were reasonably expended since August 2020. Plaintiffs are entitled to be reimbursed $978.25 for sales tax on those fees. I further find that computerized legal research ("CLR") in the amount of $540.60 is properly included in the fees and expenses claimed. Hernandez v. Bridgestone Americas Tire Operations, LLC, 831 F.3d 940, 950 (8th Cir. 2016) ("CLR is now a common litigation expense, and it may be reimbursable"). Finally, travel expenses for appearing at the show cause hearing in the amount of $389.76 are properly awarded. Copies, marshals' fees, filing fees, and fees for records are properly included in the taxation of costs, all in

the amount of $659.70. Postage in the amount of $40.95 is part of an attorney's overhead costs and will not be separately allowed.

I find that defendant Renville should be sanctioned for contempt in the amount of plaintiff's attorney's fees, expenses, and sales tax incurred in vindicating plaintiff's rights in the amount of $16,958.61. Costs should be taxes in the amount of $659.70.

## VI. Defendants United States Department of Interior, Bureau of Indian Affairs, and Timothy LaPointe.

The only relief plaintiffs sought from the federal defendants was a writ of mandamus directing such defendants to pay over to the estate of Maynard Bernard the 51% of the sale proceeds that was held in a special account with the BIA, plus interest. The federal defendants held that money for the benefit of plaintiffs, over the objection of defendant Renville. The federal defendants did not contest whether those funds should be paid to one of the parties. There is no basis for sanctioning the federal defendants as to either court costs or attorney fees and expenses.

The foregoing constitutes this Court's findings of fact and conclusions of law.

### ORDER

Based upon the extensive record,

IT IS ORDERED, ADJUDGED and DECREED as follows:

1. I declare that the settlement agreement entered into June 23, 2011, in 1:08-cv-01019-CBK, is valid and enforceable against Grady Renville.

2. I declare that the $637,500, plus interest, held by the United States Department of Interior, Bureau of Indian Affairs, in a special account belongs to the estate of Maynard Bernard.

3. The United States Department of Interior, Bureau of Indian Affairs is directed to forthwith distribute the $637,500 held in trust, plus all accrued interest, to the estate of Maynard Bernard.

4. Defendant Renville shall pay to plaintiffs $64,017.04, representing additional prejudgment interest.

14

5. Defendant Grady Renville is held in contempt of court. He shall pay to plaintiffs, as a sanction, plaintiffs' attorneys fees and expenses in the amount of $16,958.61.

6. Costs shall be taxed in the amount of $659.70.

7. A separate judgment shall be entered to award the amounts awarded against Grady Renville.

DATED this _7th_ day of December, 2020.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

15